Case 5:04-cv-00263-C   Document 19   Filed 10/27/05   Page 1 of 11   PageID 54



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 27 2005

CLERK, U.S. DISTRICT COURT
By _____
         Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| ROBERT DeLEON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. |
| § | 5:04-CV-0263-C |
| JO ANNE B. BARNHART, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## REPORT AND RECOMMENDATION

Plaintiff Robert DeLeon seeks judicial review pursuant to 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for determination of all motions that are not case-dispositive; for hearing, if necessary; and for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment.

### I.   Facts

DeLeon filed an application for Supplemental Security Income Payments (SSI) under Title XVI of the Social Security Act for a period of disability and disability benefits on July 11, 2002, alleging that his disability began on August 3, 2000, due to congestive heart failure, morbid obesity, high blood pressure, hypoxia, and sleep apnea. (Tr. 41-50.)

DeLeon is 45 years old and has a high school education. (Tr. 48, 220.) His past job experience beginning in 1979 and spanning twenty years to 1999 was as a city water/sewer foreman where he had various responsibilities that required using heavy machinery, checking wells, reading meters, fixing leaks, and carrying chlorine bottles weighing 150 pounds. (Tr. 36, 51, 53, 228.) DeLeon ceased his employment with the city in 1999 because he was falling asleep while using heavy machinery and he was afraid that he might injure one of his co-workers. (Tr. 36.)

DeLeon later resumed working for a brief period beginning in May 2000 and ending in August 2000. (Tr. 36-37, 51.) During this period he drove a tractor cutting grass on rural highways. (Tr. 52.) DeLeon testified that he stopped working as a tractor driver because he was unable to operate the heavy machinery because he experienced severe fatigue, shortness of breath, and sometimes fell asleep at the wheel of the tractor. (Tr. 37, 42.)

DeLeon's application for Title XVI benefits was denied at both the initial and reconsideration levels and DeLeon then requested a hearing before an ALJ. (Tr. 16, 31.)

DeLeon previously filed concurrent applications for Disability Insurance Benefits and SSI on September 12, 2001. (Tr. 17; *see* Tr. 220-26.) Those applications were denied on December 17, 2001, and DeLeon did not pursue appeal. (Tr. 17.) The ALJ found the requirements for reopening the claims were met and his decision in this case is based on the applications filed on September 12, 2001. (Tr. 17.)

A hearing was held on November 17, 2003, in Lubbock, Texas, before an ALJ. (Tr. 33-40.) On November 28, 2003, the ALJ issued a decision finding that DeLeon was entitled to a closed period of disability commencing August 3, 2000, and ending July 14, 2002. (Tr. 21.)

The ALJ found that the evidence established that DeLeon had not engaged in substantial gainful activity at any time since his alleged onset date (first step in the five step process).[1] (Tr. 17.) Next, he acknowledged that the objective medical evidence established that DeLeon's impairments included congestive heart failure, hypertension, sleep apnea, and obesity, impairments concluded to be severe (second step). (Tr. 17.) After reviewing the objective medical evidence the ALJ determined DeLeon's impairments were not presumptively disabling (third step). (Tr. 17.) Next, the ALJ found that between August 3, 2000, and July 14, 2002, DeLeon's medical impairments significantly impacted his ability to perform work-related activities (fourth step) and that when a claimant's ability to perform even sedentary work is significantly compromised, then Section 201.00(h) of Appendix 2 allows a finding of disability (step five); therefore the ALJ found that DeLeon was disabled for a closed period between August 3, 2000, and July 14, 2002. (Tr. 19, 20-21.)

---

[1] The Commissioner uses a five step sequential process to evaluate claims of disability and decides whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in the Commissioner's regulations (*see Loza v. Apfel*, 219 F.3d 378, 390 n.16 (5th Cir. 2000) ("If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled."); (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.

The ALJ then determined that DeLeon experienced medical improvements related to his ability to work on July 14, 2002. (Tr. 20.) Turning to the fourth step of the sequential disability evaluation process he determined that DeLeon regained the residual functional capacity to perform a wide range of light work, that he was capable of performing his past work as a grass mower, and that he was no longer disabled as of that date. (*Id.*)

DeLeon requested that the Appeals Council review the ALJ's decision. (Tr. 9.) On September 7, 2004, the Appeals Council denied DeLeon's request for review thereby rendering the ALJ's decision the final administrative decision of the Commissioner of Social Security. (Tr. 5-7.)

DeLeon contends that the ALJ erred in determining that his disability ended on July 14, 2002. He argues that (1) evidence provided by his treating physician, Sudhir R. Gogu, D.O., Ph.D., contradicts the ALJ's determination that he can perform light work; (2) evidence from Dr. Gogu demonstrates that he is limited to work with a sit/stand option[2]; and (3) the ALJ's determination that he experienced medical improvement on July 14, 2002, is not supported by substantial evidence.

---

[2] In connection with this argument DeLeon argues that in light of Dr. Gogu's opinion, the ALJ was required to solicit testimony from a vocational expert regarding the impact a sit/stand option would have upon his ability to perform light work. Although a vocational expert is generally utilized at the fifth step of the disability evaluation process, an ALJ may rely on vocational expert testimony regarding the exertional requirements of a claimant's past work at the fourth step of the disability evaluation process. *See Shave v. Apfel*, 238 F.3d 592, 593-94 (5th Cir. 2001); *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995). However, because remand is necessary for further consideration of Dr. Gogu's opinion regarding DeLeon's need for a sit/stand option, DeLeon's argument regarding the need for vocational expert testimony is not reached in this Report and Recommendation.

## II. Standard of Review

Judicial review of the Commissioner's denial of Social Security benefits is statutorily limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## III. Discussion

DeLeon's contentions have merit. Medical improvement is established by a decrease in the medical severity of the claimant's disabling impairment(s), which is shown by improvement in the symptoms, signs, and/or laboratory findings associated with the claimant's impairment(s). 20 C.F.R. § 404.1594(b)(1). The ALJ's determination that DeLeon experienced medical improvement was based on evidence that DeLeon's sleep apnea was successfully treated with a BiPAP machine. (Tr. 20.) The ALJ noted that sleep studies indicated that DeLeon's sleep apnea responded well to treatment with a BiPAP machine and that DeLeon testified that he believed he would be able to work if he used a BiPAP machine. (*Id.*; *see* Tr. 19, 38.)

The fact that use of a BiPAP machine successfully treated DeLeon's sleep apnea and the fact that he believed he could work if he had a BiPAP machine does not constitute substantial evidence to support the ALJ's decision that DeLeon experienced medical improvement as of July 14, 2002.

5

First, it is unclear why the ALJ tied the medical improvement finding to July 14, 2002, because DeLeon did not undergo the sleep study that showed that his sleep apnea responded to a BiPAP machine until September 10, 2002, (Tr. 203), and DeLeon was not advised of the results of the test or advised that he should obtain a BiPAP machine until October 29, 2002. (Tr. 106-07.) Because DeLeon was not aware that a BiPAP machine would treat his sleep apnea and was not using a BiPAP machine on July 14, 2002, it cannot be concluded that DeLeon experienced a decrease in the severity of his sleep apnea as would show medical improvement. *See* 20 C.F.R. § 404.1594(b)(1). In fact, DeLeon's sleep apnea remained untreated at the time of the hearing because he was financially unable to obtain a BiPAP machine. (Tr. 38-39.) Thus, it would be error to conclude that DeLeon experienced a decrease in the severity of his sleep apnea even as early as the date of the ALJ's hearing on October 17, 2003.

Further, although DeLeon testified that he would buy a BiPAP machine if he were to receive Social Security benefits, it is not clear that he could, in fact, buy the machine. When the ALJ asked DeLeon about purchasing a BiPAP machine this exchange took place:

> ALJ: And do you think that you can probably go back to work if you were to have a BiPAP machine?
> DeLeon: Yes, sir.
> ALJ: And if you are awarded [b]enefits and put in pay status and you get some money you will buy that [BiPAP machine], will you not?
> DeLeon: Yes, sir. I will buy the BiPAP machine as soon as possible.

(Tr. 38-39.)

Despite DeLeon's testimony, there is evidence that DeLeon might not be able to afford a BiPAP machine even though he may be awarded benefits for a closed period of disability. Because the ALJ did not tell DeLeon what amount of benefits he might receive, it was not possible for him to provide a knowing answer as to whether he could purchase a BiPAP machine with the benefits, and the evidence shows that DeLeon may be forced to use an award of benefits to pay medical debts.

After Dr. Gogu advised DeLeon that he should obtain a BiPAP machine to treat his sleep apnea, DeLeon wrote a letter to one of his physicians explaining that he was "in desperate need" of a BiPAP machine, that the machine could not be rented and would cost $4,000 to purchase, and that he could not afford to purchase the machine. (Tr. 197-98.) DeLeon explained to the physician that he had not worked in two and one-half years and that he owed $12,000 in medical bills. (Tr. 197.) Given that DeLeon had not worked in two and one-half years, his debt could be substantially higher than the $12,000 he owed to physicians and hospitals for medical treatment and might be subject to liens.[3]

"A medical condition that can reasonably be remedied is not disabling. If, however, the claimant cannot afford the prescribed treatment and can find no way to obtain it, the

---

[3] The evidence also shows that it was difficult for DeLeon to obtain the sleep study. For two years DeLeon attempted but was unable to obtain a sleep study because he lacked the financial funds. (Tr. 122, 125, 130, 132.) On several occasions DeLeon complained to his physicians that he was unable to pay for the sleep study. (Tr. 122, 125, 130.) DeLeon's healthcare providers attempted to aid DeLeon in obtaining the sleep study by referring him for financial assistance. (Tr. 125.) DeLeon was denied financial assistance by various organizations. (Tr. 125.) Hi-Plains Sleep Diagnostic in Lubbock, Texas, did not provide financial aid but stated DeLeon must self-pay by making arrangements with the facility. (Tr. 125.) Once it was established that DeLeon could not get financial assistance for the sleep study, he stated on October 5, 2001, that he would try to make the necessary financial arrangements to self-pay. (Tr. 122, 130.) DeLeon finally underwent a sleep study on September 10, 2002. (Tr. 202-211.)

condition that is disabling in fact continues to be disabling in law." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986). Because remand is required for the resolution of the other issues discussed in this Report and Recommendation, the Commissioner should inquire further into this matter.

In addition to the lack of substantial evidence to support the ALJ's finding regarding medical improvement, the ALJ failed to apply the correct legal standards in assessing Dr. Gogu's medical opinions. On July 14, 2002, Dr. Gogu completed a Cardiac Residual Function Capacity (Cardiac RFC) Assessment on DeLeon's behalf. (Tr. 188-193.) Dr. Gogu noted that DeLeon suffered from shortness of breath, fatigue, weakness, and dizziness. (Tr. 188.) He believed that DeLeon could occasionally lift and carry fifty pounds and frequently lift and carry twenty pounds and was capable of walking five blocks without resting. (Tr. 190, 192.) However, he also indicated DeLeon could sit for only one hour at a time before needing to get up and could stand for only two hours before needing to sit down and that he would need a job that would permit shifting from positions at will from sitting, standing, and walking. (Tr. 190-91.) He further indicated that DeLeon should avoid concentrated exposure to extreme heat and environmental toxins such as fumes and gases and that he should avoid hazards such as machinery and heights. (Tr. 192.)

Although the ALJ referenced and summarized Dr. Gogu's Cardiac RFC assessment, he did not adopt Dr. Gogu's opinions. (Tr. 18, 20.) The ALJ stated that Dr. Gogu's opinions were consistent with his determination that DeLeon had experienced improvement and was

capable of a wide range of light work. (Tr. 20.) This is incorrect. Dr. Gogu's opinions would restrict DeLeon from work that would not allow him to alternate between sitting, standing, and walking, that would involve exposure to extreme heat and concentrated exposure to environmental toxins, and that would require work with machinery and heights. (Tr. 192.) Not only are Dr. Gogu's opinions inconsistent with the ALJ's finding that DeLeon could perform a full range of light work, they are inconsistent with the ALJ's finding that DeLeon could work as a grass mower.

It appears that the ALJ based his determination that DeLeon experienced medical improvement and could perform his past work as a mower solely on the fact that a BiPAP machine would successfully treat DeLeon's sleep apnea without considering whether his other impairments would impose limitations on his ability to work as a mower. This omission is critical because Dr. Gogu's opinions in the assessment from July 14, 2002, were based not on DeLeon's sleep apnea but on symptoms related to his cardiac condition. (Tr. 188.) Prior to completing the Cardiac RFC Assessment, on June 12, 2002, DeLeon underwent an EKG which was abnormal and indicated the presence of a first degree A-V block, marked left axis deviation, and an old inferior infarction. (Tr. 150.) On June 26, 2002, a scan of DeLeon's heart showed that his heart was enlarged and that the aorta was atherosclerotic and tortuous. (Tr. 182.) On June 27, 2002, Dr. Gogu diagnosed DeLeon with congestive heart failure. (Tr. 164-65.)

"[T]he ALJ is entitled to determine the credibility of medical experts . . . and weigh their opinions accordingly." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)

9

(citations and internal quotations omitted). The ALJ's "power to judge and weigh evidence includes the power to disregard" such evidence and courts must uphold such a determination if supported by substantial evidence. *Id.* at 238. However, treating source medical opinions are entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527, 416.927. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (citing S.S.R. 96-2p). Further, only when good cause is shown may an ALJ assign little or no weight to a treating physician's opinion. *Greenspan*, 38 F.3d at 237. In *Newton* the Fifth Circuit Court of Appeals acknowledged that the good cause exception "may permit an ALJ to discount the weight of a treating physician opinion relative to that of other experts where the treating physician's opinion is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." 209 F.3d at 456 (citations omitted).

Dr. Gogu's opinions with respect to DeLeon's need to alternate between sitting, standing, and walking at will, that he should avoid exposure to certain environmental toxins, and his indication that DeLeon should not work at heights or around moving machinery are uncontradicted and are "medical opinions" as that term is defined in the regulations. 20 C.F.R. § 404.1527(a)(2); *see also Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001*); Newton*, 209 F.3d at 453-54. Thus, they are subject to assessment as required under *Newton*. The ALJ, however, failed to assess Dr. Gogu's opinions under the regulatory factors and failed to provide good cause for rejecting the opinions. Remand is therefore required for further consideration of Dr. Gogu's Cardiac RFC Assessment.

10

IV. **Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand DeLeon's case for further administrative proceedings.

V. **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: October 27, 2005.

NANCY M. KOENIG
United States Magistrate Judge